AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No. 21-MJ-65 |
| THE PREMISES LOCATED AT 8507 LONGWOOD VIEW AVENUE, BATON ROUGE, LOUISIANA 70810, SINGLE- FAMILY RESIDENCE | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____Middle_____ District of _____Louisiana_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 § 1043 | Wire Fraud |
| 18 § 1344 | Bank Fraud |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Jeff Rosenquist, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date:  June 15, 2021

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Scott D. Johnson, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>The premises located at<br>**8507 Longwood View Avenue, Baton Rouge, Louisiana 70810**<br>single-family residence. | Case No. ___21-MJ-65___<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jeff Rosenquist, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premise of a residence located at 8507 Longwood View Avenue, Baton Rouge, Louisiana 70810, further described in Attachment A, for the items described in Attachment B (hereinafter, the "TARGET PREMISES").

2.      I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been employed in this capacity for approximately four years. I am currently assigned to the New Orleans Division Baton Rouge Resident Agency of the FBI, White Collar Crime/Public Corruption Squad, and have primary investigative responsibility for financial crimes and public corruption matters. Moreover, I am a federal law enforcement officer who is engaged in investigating violations of criminal laws, including 18 U.S.C. §§ 1343, 1029, 1014, and 1957, and I am authorized by the Attorney General to request a search warrant.

3.      I make this affidavit based on my personal knowledge, review of evidence obtained and information provided by other law enforcement officers, including other FBI Agents, witnesses, and other sources.  I submit the information in this affidavit for the limited purpose of establishing probable cause for the requested Search and Seizure Warrant and have not included every detail I know about this investigation.  I have only set forth the specific facts that I believe are necessary to establish probable cause to search the TARGET PREMISES.

4.      Based on my training and experience and the facts set forth in this affidavit, I submit there is probable cause to believe evidence of the following crimes will be found at the Target Premises: wire fraud, in violation of 18 U.S.C. § 1043; and bank fraud, in violation of 18 U.S.C. § 1344.  I submit there is probable cause to search the TARGET PREMISES, including any and all vehicles, sheds, structures and out buildings on the property and curtilage, for evidence, instrumentalities, or fruits of these crimes.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a magistrate judge with authority in the district" and the property at issue is "located within the district."  Fed. R. Crim. P. 41(b)(1).

## PROBABLE CAUSE

6.      The FBI is conducting an investigation of a fraud scheme in the Middle District of Louisiana and elsewhere.  Agents have identified Melvin August, Terrance August, and Lateef

Montgomery (hereinafter "M.August," "T.August," and "Montgomery") as participating and facilitating schemes to commit bank and wire fraud since at least December 2020.

## SCHEME #1

7.    On December 4, 2020, an unknown individual (hereinafter "UNSUB #1"), contacted First Merchant Bank, (hereinafter "FMB"). UNSUB #1 impersonated Victim #1[1] and changed Victim #1's phone number on Victim #1's account. UNSUB #1 changed the phone number on the account to 734-715-7567.

8.    Shortly after changing the phone number, UNSUB #1 called FMB wire department and requested a wire for $48,000 be sent to M.August at Essential Federal Credit Union, hereinafter EFCU. UNSUB #1 claimed M.August was Victim #1's father in law. UNSUB #1 claimed M.August resided in Arizona, but was in Louisiana at the time of the wire request. UNSUB #1 told the FMB employees the money was a loan. FMB independently determined Victim #1 had family who lived in Arizona and located records for Victim #1's daughter having lived in Arizona. FMB bank protection approved the wire on December 4, 2020.

9.    The telephone number 734-715-7567 is operated by the telephone application TextNow. TextNow is a Voice Over Internet Protocol (VOIP) provider. VOIP providers route their calls through the internet rather than traditional cell networks. Incoming phone calls to the VOIP number will ring simultaneously on all of the user's configured phones. According to TextNow

---

[1] The Victim's name has not been included to protect his/her identity, but can be provided to the Court upon request. I verified the Victim was a customer of FMB.

from December 4 to December 12 2020, the phone number was registered using only the email address jesicaspring@gmail.com.

10.     Google identified the account jesicaspirng@gmail.com as registered to Jessica Spring. The account was created on January 25, 2015. The last login into the account occurred on February 26, 2016. The Internet Protocol (IP) address was owned by the internet service provider (ISP) Virgin Media Limited. The address for the ISP was Berkshire, United Kingdom.

11.     From December 4 to December 12, 2020, a total of eight phone calls were placed by 734-715-7567. All the phone calls were on December 4, 2020. Seven of the phone calls were to FMB.  The other call was to phone number 855-240-3763. The provider of the phone number 855-240-3763 was not able to be determined.

12.     On December 15, 2020 after receiving a bank statement and an account change notice regarding the change in telephone number from FMB via United States mail, Victim #1 called FMB customer service regarding a wire transfer. Victim #1 informed FMB they did not initiate the wire transfer and had not changed the phone number on their account. Victim #1 informed FMB they did not know an individual by the name of M.August.

13.     Victim #1 was reimbursed by FMB for the loss of the funds.

14.     EFCU opened an account for M.August on September 30, 2019. On M.August's account opening documents, M.August provided the following information:

     a.   Date of birth: September 21, 1973

     b.   Cell phone number: 225-407-5720

     c.   Home address: 5420 Saint Dorothy Street, Baton Rouge, Louisiana 70805

15.     M.August provided a Louisiana Driver's License to EFCU at the time he registered for the account, the same M.August that is the subject of this warrant. The address listed on the Driver's License was 1539 North 23rd Street, Baton Rouge, Louisiana 70802.

16.     The wire was received into M.August's EFCU account at approximately 2:24PM CST on December 4, 2020. At approximately 4:18PM CST December 4, 2020, M.August withdrew $38,000 from an EFCU branch in cash. From December 4 to December 7, 2020, M.August withdrew approximately $47,910 in cash from various automated teller machines (ATM) locations and EFCU branches.

17.     Photographs of an individual your affiant believes to be M.August inside an EFCU branch on December 4 and 7, 2020, show an African American male wearing glasses with a white marking on the hinge. On December 4, 2020, the individual believed to be M.August wore a Boston Red Sox baseball cap. On December 7, 2020, the same individual believed to be M.August wore a black stocking cap. On both dates, the individual believed to be M.August wore a facemask.

18.     A review of M.August's banking activity from September 2019 to December 2020 showed weekly direct deposits ranging from approximately $500 to $850 from Excel Maintenance Services. The weekly deposits are followed by cash withdrawals from various ATMs within a day or two of the deposit.

19.     FBI agents interviewed M.August's former supervisor at Excel Maintenance Services. M.August reported his tardiness to work through multiple telephone numbers. His

supervisor found M.August's frequent change in telephone numbers strange. M.August was terminated from Excel Maintenance Services in October 2020 due to attendance issues.

20.    Following his termination, M.August found employment at Spiral Metals Corporation of BR. On October 25, 2020, on M.August's application for employment, Form W-4, and United States Citizenship and Immigration Services Form I-9 M.August listed the 2546 Rose Garden Drive, Baton Rouge, Louisiana, hereinafter Rose Garden, as his present residence. On May 2, 2021, M.August's payroll check listed the Rose Garden address as M.August's address.

21.    M.August is a registered sex offender due to being convicted of Louisiana Criminal Law RS 14:42.1 Forcible Rape on April 17, 1995. The terms of M.August's sex offender status require him to check in quarterly with East Baton Rouge Sheriff's Office, hereinafter EBRSO. M.August was delinquent from May 2020 to March 2021.

22.    On March 30, 2021, after being arrested for failure to comply with his quarterly check-ins with EBRSO, M.August provided the following addresses to EBRSO, , neither of which are the Rose Garden address:

   a.  4133 Greenwell Street, Baton Rouge, Louisiana 70805

   b.  1539 North 23rd Street, Baton Rouge, Louisiana 70802

23.    Due to M.August's criminal history, your affiant believes M.August intentionally keeps his physical address secret. You affiant believes M.August would provide his correct address to his employer as a way to ensure his paychecks are received, but not to EBRSO.

## SCHEME #2

24.    On November 13, 2020, a Capital One Bank account was opened by T.August. The listed names on the account were Victim #2[2] and T.August. The listed address for T.August on the account was the Rose Garden address. Based on an interview your affiant conducted with Victim #2, your affiant learned Victim #2 does not know and has never met T.August. Victim #2 did not give permission to T.August to open a joint account using Victim #2's personal identifying information.

25.    On November 17, 2020, T.August called Capital One Bank using telephone number 225-454-5976. T.August identified himself to the Capital One Bank employee on the phone call. T.August called Capital One Bank a total of 21 times from the phone number ending 5976. After reviewing the recorded phone calls with Capital One Bank, your affiant believes an individual impersonating Victim #2 and T.August were present during the phone call. After interviewing and speaking with Victim #2, your affiant believes the voice on the recorded bank calls differed from Victim #2 actual voice.

26.    On January 15, 2021, an unknown individual, hereinafter UNSUB #2, called Region's bank using phone number to 225-454-5976 to set up online access to Victim #2's Regions Bank account. UNSUB #2 changed the phone number, mailing address, and statement preferences for the account. Regions called the new account phone number provided by UNSUB #2 to confirm

---

[2] The Victim's name has not been included to protect his/her identity, but can be provided to the Court upon request. I verified the Victim was a customer of Regions Bank.

the changes. The voice which called Capital One Bank and Regions which impersonated Victim #2 was similar to the voice which called into FMB to impersonate Victim #1.

27.     In January 2021, Victim #2 received a call from a Regions bank employee questioning a transfer of $100,000. Victim #2 had no prior knowledge of the transfer and did not request the transfer.

28.     After receiving the call about the transfer request in January 2021, Victim #2's spouse called to check the balance of their Regions account. The account was lower than Victim #2's spouse expected. Victim #2's spouse was told by Regions the funds had been transferred to a Capital One Bank account in Victim #2's name. Victim #2 had never opened an account at Capital One Bank.

29.     Capital One Bank provided Victim #2 with a bank statement and transaction history for the account. A deposit from Regions Bank was made on January 29, 2021 in the amount of $68,575.28. Another deposit from Regions Bank was made on February 9, 2021 in the amount of $157,745.67. Both deposits were not requested or authorized by Victim #2.

30.     From February 2 to 18, 2021, T.August and others withdrew approximately $130,647 in cash from various ATM locations and Capital One Bank branches. The withdrawals occurred at banks and ATMs located in Marrero, Denham Springs, and Baton Rouge, Louisiana.

31.     A vacation stay was reserved on the Capital One Bank account through VRBO for $2,497.30. The money for the vacation was ultimately refunded to the account. The vacation was booked in T.August's name.

8

32.     On March 11, 2021, FBI agents spoke with Capital One Bank Fraud Investigator Kenneth A. Black. According to Black, the account was registered online with IP address 172.58.141.90. The IP address returned to T-Mobile out of Illinois.

33.     From January 13, 2021 to February 18, 2021, using T.August's credentials the Capital One Bank account was logged into remotely 136 times. Seventy-six of those logins were from the IP address 72.203.128.104. The IP address is owned by Cox Communications. Cox Communications identified the IP address as being subscribed to Montgomery. The address which Montgomery uses the IP address is the TARGET PREMISES. Montgomery received cable services, high speed data services, and telephone services from Cox Communication at the TARGET PREMISES.

34.     Sixty-seven of the 76 logins were from the unique device identifier, also known as a UDID number, A631CA7A121F4E2A9CEC5D7255A8EFC0. Capital One Bank identified the device as an iPad. Nine of the 76 logins were from the web using the device or cookie number 5499493b-d24a-4150-930e-a5663b4c7e6f.

35.     Thirty-four of the logins were from IP address 107.77.196.189. The IP address returned to AT&T out of Texas. Twenty-seven of the 34 logins were from a mobile device. The other seven logins were identified as from the web. The UDID used to login the account was c2e6344f95f67a44. Capital One Bank identified the device as an Android.

36.     On January 14, 2021, the IP address 172.58.140.247 logged into the Capital One Bank account using T.August's credentials. The IP address returned to T-Mobile out of Illinois.

9

The UDID used to login the account was 36FC765A03E64DB48D4FB8AA6843A5BA. Capital One Bank identified the device as an iPhone.

37.    Montgomery provided Cox Communication with the home phone number 225-615-4323. On January 19, 2021, the number ending 4323 called Capital One Bank. The individual who called Capital One Bank identified themselves as T.August.

38.    Victim #2 was enrolled in online banking for the Capital One Bank account and assigned a username. No activity was recorded using Victim #2's username. All of the 136 remote logins were completed using T.August's credentials and password.

39.    Black also informed the interviewing agents on January 27, 2021, Capital One Bank spoke with someone who claimed to be Victim #2 to verify the account. At that time, UNSUB #2 provided Capital One Bank with a Texas identification card under the name of Victim #2. The identification card is shown below:



40.    Victim #2's real Texas identification card is shown below:



41.    Agents reviewed images of the individuals conducting the multiple cash withdrawals from Capital One Bank branches. The identification card provided for the withdrawals was for T.August, Louisiana Identification number XXXX999, the same T.August that is the subject of this warrant. The address listed on the card was 1539 N. 23rd Street, Baton Rouge, Louisiana 70802. The address is the same address listed on M.August's Louisiana Driver's License and provided to EBRSO by M.August.

42.    A review of the images of the individuals withdrawing currency from Capital One Bank showed what your affiant believes to be two different African American males. One of the

individuals withdrew money from the drive thru, and the other individual withdrew the funds from a teller window inside the bank.

43.    The individual who withdrew funds from a teller window appears to match a driver's license photograph of T.August.

44.    The individual who withdrew the funds from the drive thru drove a silver Chevrolet Silverado bearing Louisiana license plate number Z088230, hereinafter the Silverado. The individual driving the Silverado appears to match a driver's license photograph of Montgomery.

45.    FBI agents conducted surveillance on the TARGE PREMISE and observed the Silverado parked in front of the residence. Multiple other vehicles were also observed at the residence. The vehicles included a dark gray Dodge Charger bearing Louisiana license plate number 475 DHD, a silver Pontiac Ion with no license plate was parked in the yard, and a dark red Dodge Aspen was backed into the driveway.

46.    A Louisiana Department of Motor Vehicles check were completed on the vehicles. The Silverado was registered to Montgomery. The license plate on the Dodge Charger returned to a 1996 Chevrolet Carprise registered to Montgomery.  The address listed on both vehicle registrations was 2586 Rose Garden Drive, Baton Rouge, Louisiana. This address was also listed on Montgomery's Louisiana driver's license. The address is approximately four houses west of the Rose Garden address.

47.    FBI agents conducted surveillance on the Rose Garden on multiple occasions over a three-month time frame. On the multiple occasions, two vehicles were observed in the driveway.

12

The vehicles were a blue Ford truck bearing Louisiana license plate X851198 and a black Infiniti G35 sedan bearing Louisiana temporary tag 19Y395Y5.

48.    Louisiana Department of Motor Vehicle checks were completed on the vehicles. The Ford truck was insured to Dianna August (hereinafter "Dianna"). Dianna is the mother of T. and M.August. The black Infiniti G35 was registered to T.August. Due to the same two vehicles being located at the Rose Garden on multiple occasions, it is your affiant's belief Dianna and T.August reside at the Rose Garden.

49.    The Rose Garden address is located in a neighborhood in Baton Rouge, Louisiana where law enforcement vehicles are identified by residents. Therefore, surveillance is difficult to be conducted without being identified. However, it is your affiant's belief a vehicle observed at an address on multiple occasions during the early morning hours is indicative of an individual residing at the residence.

50.    According to East Baton Rouge Parish Assessor's website, Dianna is the primary owner of the Rose Garden address. The website lists Dianna as the 100% owner since March 5, 2009.

51.    On March 15, 2021, Victim #2 informed FBI agents Regions Bank had reimbursed the entire amount that was taken from their account; approximately $230,000.

**PHONE NUMBERS**

52.    AT&T identified the phone number 225-454-5976 as a prepaid number, the phone number which called into Capital One Bank and the caller identified themselves as T.August.

13

53.    T-Mobile identified the phone number 225-407-5720 as belonging to M.August.

54.    From September 1, 2020 to March 24, 2021, the telephone numbers your affiant believes to be used by M.August and T.August had approximately 422 communications. On December 4, 2020, the date M.August received the wire from Victim #1 the telephone numbers your affiant believes to be used by M.August and T.August communicated approximately 29 times. The telephone number 225-454-5976 was the most contacted number on December 4, 2020 by 225-407-5720From September 1, 2020 to March 24, 2021, M.August and Montgomery had approximately 10 communications.

## SUMMARY

55.    Due to Scheme #1 and Scheme #2 following a similar process of changing a victim's account information followed by large withdrawals from the victim's account, your affiant believes the same group of individuals are conspiring to defraud victims. Additionally, the voice impersonating Victim #1 and #2, which called into the different financial institutions, was similar.

56.    It is your affiant's belief that M.August, T.August, and Montgomery are conspiring together to defraud the known and potentially unknown victims.

57.    It is currently unknown to your affiant how the M.August, T.August, and Montgomery are obtaining the victims information to conduct their fraudulent scheme. Your affiant believes information on how the M.August, T.August, and Montgomery obtained this

14

personal information will be located at the TARGET PREMISES in the forms of journals, diaries, notebooks, canceled checks, or other types of documentation.

58.    As described above, the FBI believes that Montgomery resides at the TARGET PREMISES.

59.    It is believed the TARGET PREMISES will also contain records and information in regards to the unaccounted wealth for Montgomery. As of the fourth quarter of 2020, Montgomery last known employment was United Parcel Service, UPS. Montgomery has been employed by UPS since the fourth quarter of 2017. As discussed above, a Dodge Charger with a plate registered to a different vehicle was observed at the TARGET PREMISES. A Dodge Charger is a nice vehicle. As such, a search of the TARGET PREMISES will allow investigators to determine the origin of the vehicle and the source of funds used to purchase the vehicle.

60.    The subjects were able to conduct their schemes by using the internet and telephones. In Scheme 1, the subjects changed the victim's telephone number using a VOIP telephone number. VOIP numbers require the internet or data and an electronic device, such as a computer or cell phone, to send and/or receive calls. In Scheme 2, the subjects used the telephone to gain online access to the Victim #2's account. After the subjects created an online profile, the subjects changed the phone number, mailing address, and statement preferences of Victim #2. Without the use of electronic devices and the internet, the subjects would not have been able to conduct their scheme.

## NEED FOR A SEARCH WARRANT

61.     Based on my training and experience, including in the execution of search warrants, I know that subjects who engage in illegal activity are similar to others in our society who maintain documents and records, including hand written notes, photographs, text messages, voice messages, and other common forms of communication.   Often, these subjects retain documents and records for long periods, regardless of whether the value of the items has diminished.  I know in some cases documents that are incriminating in nature are still possessed months, or even years, after they come into the subject's possession.  Sometimes, these subjects do not realize the incriminating nature of the documents or believe that investigators will not appreciate the incriminating nature of the material. In this matter, Montgomery used the IP address from the TARGET PREMISES to login into and change Victim #2's Regions account information.

62.     Based on my training and experience, I know that during the process of obtaining a bank account, financial institutions require customers to provide documents to prove their identity and income. As part of the transactions, financial institutions generate additional documents, such as monthly statements, payment receipts, government mandated documents, and withdrawal receipts.  In this case, T.August was listed as an account recipient on the Capital One Bank account and received statements at the Rose Garden address.

63.     Based on my training and experience, individuals that defraud victims often require new sources of income when one victim becomes aware of the scheme and notifies their financial institution. In this matter, UNSUB #1 and UNSUB #2 used the telephone to communicate account

16

changes to the financial institutions. After the changes were completed, large withdrawals from the victim's accounts occurred. After the victim's learned of the fraud, they contacted their financial institutions who in turn secured the victim's accounts. Due to this and in order for the Augusts and Montgomery to continue their fraudulent scheme, it is your affiant's belief Montgomery will retain information on their past victims and potential future victims at the TARGET PREMISES.

64.     Based on my training and experience, I know participants in fraud schemes often use cellular telephones to communicate with their associates about such schemes. Those same cellular telephones retain evidence which can indicate the discussion of fraudulent behavior. I have investigated cases where subjects of the investigation have attempted to alter, create or destroy documents or text messages relevant to their crimes. Therefore, I submit that cellular telephones should be seized through the execution of this search warrant. In this case, T.August and Montgomery used the same phone number to contact Capital One Bank and Regions Bank in order to conduct their fraudulent scheme as they did to contact M.August.

65.     Based on my training and experience, I know individuals and businesses communicate through email to conduct business. Financial institutions communicate with customers by sending account statements, account notifications, and other marketing information. Often times these documents are exchanged over email. In this matter, the email accounts for both Victims bank accounts were changed. The purpose of this is believed to facilitate all bank

17

communication through the fraudsters. Your affiant believes this information will be obtained on cellular devices or computers.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

59.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the TARGET PREMISES, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.   Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

60.    *Probable cause.*  I submit that if a computer or storage medium is found on the TARGET PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

     a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file

18

on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

19

e.   Based on actual inspection of other evidence related to this investigation, financial records, I am aware that computer equipment was used to generate, store, and print documents used in the fraud scheme.  There is reason to believe that there is a computer system currently located on the TARGET PREMISES.

61.   *Forensic evidence.*   As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the TARGET PREMISES because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other

20

external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.

21

For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating

22

criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence

of counter-forensic programs or anti-virus programs (and associated data) may be
relevant to establishing the user's intent.

62.    *Necessity of seizing or copying entire computers or storage media.*  In most cases,
a thorough search of a premises for information that might be stored on storage media often
requires the seizure of the physical storage media and later off-site review consistent with the
warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an
image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic
picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or
imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage
media, and to prevent the loss of the data either from accidental or intentional destruction.  This is
true because of the following:

   a.   The time required for an examination. As noted above, not all evidence takes the
        form of documents and files that can be easily viewed on site.  Analyzing
        evidence of how a computer has been used, what it has been used for, and who
        has used it requires considerable time, and taking that much time on premises
        could be unreasonable. As explained above, because the warrant calls for forensic
        electronic evidence, it is exceedingly likely that it will be necessary to thoroughly
        examine storage media to obtain evidence.  Storage media can store a large
        volume of information.  Reviewing that information for things described in the

warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

63.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted

25

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

64.    Because multiple people share the TARGET PREMISES as a residence, it is possible that the TARGET PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## REQUEST FOR SEALING

65.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## CONCLUSION

66.    Based on the foregoing, I submit there is probable cause to believe M.August, T.August, and Montgomery used or are using the TARGET PREMISES, a residence located at 8507 Longwood View Avenue, Baton Rouge, Louisiana 70810, to conduct and/or conceal the schemes to defraud as described herein. It is believed fruits of these schemes will be kept at the residence. I submit that this affidavit supports probable cause that the evidence, fruits and instrumentalities of violations of 18 U.S.C. § 1343: Wire Fraud, and 18 U.S.C. § 1344: Bank Fraud: as described in Attachment B, are and will be located at 8507 Longwood View Avenue, Baton Rouge, Louisiana 70810. A more complete description of the residence is provided in Attachment A.

Respectfully submitted,

Jeff Rosenquist
Special Agent
FBI

**Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on** June 15, 2021 .

JUDGE SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE

27

<u>**Filed Under Seal**</u>

<u>**ATTACHMENT A**</u>

<u>**Property to be Searched**</u>

This warrant applies to the premises located at 8507 Longwood View Avenue, Baton

Rouge, Louisiana 70810 ("TARGET PREMISES"), to include all vehicles, sheds, structures and

out buildings on the property and curtilage thereof. It is a single family house. The following

photographs are of the TARGET PREMISES:



**Filed Under Seal**



**<u>Filed Under Seal</u>**



**Filed Under Seal**

**ATTACHMENT B**

**Property to be Seized**

1.      All records relating to violations of 18 U.S.C. § 1343 Wire Fraud and 18 U.S.C. § 1344, (collectively, the **"TARGET OFFENSES"**), those violations involving T.August, M.August, Montgomery and others, and occurring after December 2020 and up until the date of the warrant, including:

A.  Records and information related to accounts with financial institutions, including, but not limited to, account opening documents, statements, checks, money orders, receipts, and deposit and withdrawal slips;

B.  Documents, records, or correspondence that may be related to bank accounts, credit card or debit card accounts, used in or obtained through the commission of the TARGET OFFENSES;

C.  Any debit cards, credit cards, checks, cash, or other proceeds or fruits of the TARGET OFFENSES;

D.  Any documents or records reflecting personally identifiable information of victims or potential victims,  including names, social security numbers, dates of birth, driver's license numbers, credit card numbers, and bank account information ("PII"), how or where PII was used, or where PII was acquired, and all items or documents that when used alone or in combination with another, can establish an identity;

E.  Any and all indicia of occupancy of the TARGET PREMISES described in  Attachment A to be searched, any and all cellular telephones, caller identification terminals, and their stored information, and any opened and unopened merchandise believed to be fraudulently purchased from retail merchants;

F.  Telephone and address books, computer records or papers which reflect the names, addresses and telephone numbers of individual associated with any and all victims, including the names and identities of co- conspirators and victims of any such scheme and other identity theft schemes;

G.   The search shall also authorize officers to search the persons and items attached to them (such as purses, backpacks, etc.) encountered at the search location, whether they are located indoors, outdoors or in an automobile found within the location and/or the curtilage of the location.  The search shall include any and all vehicles at the location and/or within the curtilage of the location that belong to the individuals found within the property to be searched.

H.  Any computers, smart phones, or any other electronic media that were or may have been used as a means to commit the offenses described in the warrant;

I.  Electronic devices, including computers, cell phones, and storage mediums, related to the preparation, presentation, or transmission of banking documents and/or the possession or use of PII;

J.  Computers or storage media used as a means to commit the violations described above, including the TARGET OFFENSES.

6

**Filed Under Seal**

K.  For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

**Filed Under Seal**

    g.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.   evidence of the times the COMPUTER was used;

    i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.   records of or information about Internet Protocol addresses used by the COMPUTER;

    l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    m.  contextual information necessary to understand the evidence described in this attachment.

L.   Records and things evidencing the use of the Internet to communicate with any state agency, including;

    a.   Routers, modems, and network equipment used to connect computers to the Internet;

    b.   Records of Internet Protocol addresses used;

**Filed Under Seal**

    c.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-type web addresses.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, FBI may deliver a complete copy of the seized or copied

9

<u>**Filed Under Seal**</u>

electronic data to the custody and control of attorneys for the government and their support staff

for their independent review.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>THE PREMISES LOCATED AT 8507 LONGWOOD<br>VIEW AVENUE, BATON ROUGE, LOUISIANA 70810,<br>SINGLE- FAMILY RESIDENCE | )<br>)<br>)  Case No.  21-MJ-65<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

    SEE ATTACHMENT "A"

This Court possesses the authority to issue this warrant under 18 U.S.C. Sections 2703(c)(1)(A) and 2711(3)(A)(i) and Federal Rule of Criminal Procedure 41.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
    SEE ATTACHMENT "B"

        **YOU ARE COMMANDED** to execute this warrant on or before _____June 25, 2021,_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ❑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Scott D. Johnson_____ .
                                                                                            *(United States Magistrate Judge)*

        ❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
        ❑ for _____ days *(not to exceed 30)*      ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____June 15, 2021, at 8:27 PM_____          _____
                                                                                            *Judge's signature*

City and state:  Baton Rouge, Louisiana          Scott D. Johnson, U.S. Magistrate Judge
                                                                              *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  21-MJ-65 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____          _____
                                                                  *Executing officer's signature*

                                                        _____
                                                                    *Printed name and title*

Filed Under Seal

ATTACHMENT A

Property to be Searched

This warrant applies to the premises located at 8507 Longwood View Avenue, Baton

Rouge, Louisiana 70810 ("TARGET PREMISES"), to include all vehicles, sheds, structures and

out buildings on the property and curtilage thereof. It is a single family house. The following

photographs are of the TARGET PREMISES:



2

**Filed Under Seal**



**<u>Filed Under Seal</u>**



**Filed Under Seal**

**ATTACHMENT B**

**Property to be Seized**

1.        All records relating to violations of 18 U.S.C. § 1343 Wire Fraud and 18 U.S.C. §

1344, (collectively, the **"TARGET OFFENSES"**), those violations involving T.August,

M.August, Montgomery and others, and occurring after December 2020 and up until the date of

the warrant, including:

A. Records and information related to accounts with financial institutions, including, but

not limited to, account opening documents, statements, checks, money orders, receipts,

and deposit and withdrawal slips;

B. Documents, records, or correspondence that may be related to bank accounts, credit card

or debit card accounts, used in or obtained through the commission of the TARGET

OFFENSES;

C. Any debit cards, credit cards, checks, cash, or other proceeds or fruits of the TARGET

OFFENSES;

D. Any documents or records reflecting personally identifiable information of victims or

potential victims,  including names, social security numbers, dates of birth, driver's

license numbers, credit card numbers, and bank account information ("PII"), how or

where PII was used, or where PII was acquired, and all items or documents that when used

alone or in combination with another, can establish an identity;

5

**Filed Under Seal**

E.  Any and all indicia of occupancy of the TARGET PREMISES described in  Attachment A to be searched, any and all cellular telephones, caller identification terminals, and their stored information, and any opened and unopened merchandise believed to be fraudulently purchased from retail merchants;

F.  Telephone and address books, computer records or papers which reflect the names, addresses and telephone numbers of individual associated with any and all victims, including the names and identities of co- conspirators and victims of any such scheme and other identity theft schemes;

G.   The search shall also authorize officers to search the persons and items attached to them (such as purses, backpacks, etc.) encountered at the search location, whether they are located indoors, outdoors or in an automobile found within the location and/or the curtilage of the location.  The search shall include any and all vehicles at the location and/or within the curtilage of the location that belong to the individuals found within the property to be searched.

H.  Any computers, smart phones, or any other electronic media that were or may have been used as a means to commit the offenses described in the warrant;

I.  Electronic devices, including computers, cell phones, and storage mediums, related to the preparation, presentation, or transmission of banking documents and/or the possession or use of PII;

J.  Computers or storage media used as a means to commit the violations described above, including the TARGET OFFENSES.

6

<u>**Filed Under Seal**</u>

K.  For any computer or storage medium whose seizure is otherwise authorized by this

warrant, and any computer or storage medium that contains or in which is stored records

or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

  a.  evidence of who used, owned, or controlled the COMPUTER at the time the things

  described in this warrant were created, edited, or deleted, such as logs, registry

  entries, configuration files, saved usernames and passwords, documents, browsing

  history, user profiles, email, email contacts, "chat," instant messaging logs,

  photographs, and correspondence;

  b.  evidence of software that would allow others to control the COMPUTER, such as

  viruses, Trojan horses, and other forms of malicious software, as well as evidence

  of the presence or absence of security software designed to detect malicious

  software;

  c.  evidence of the lack of such malicious software;

  d.  evidence indicating how and when the computer was accessed or used to determine

  the chronological context of computer access, use, and events relating to crime

  under investigation and to the computer user;

  e.  evidence indicating the computer user's state of mind as it relates to the crime under

  investigation;

  f.  evidence of the attachment to the COMPUTER of other storage devices or similar

  containers for electronic evidence;

7

**Filed Under Seal**

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

L.  Records and things evidencing the use of the Internet to communicate with any state agency, including;

a.  Routers, modems, and network equipment used to connect computers to the Internet;

b.  Records of Internet Protocol addresses used;

**Filed Under Seal**

    c.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-type web addresses.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, FBI may deliver a complete copy of the seized or copied

**<u>Filed Under Seal</u>**

electronic data to the custody and control of attorneys for the government and their support staff

for their independent review.